**Kevin H. GRIFFIN, Appellant,**

v.

**James E. AIKEN, Warden; Attorney General of the State of South Carolina, Appellees.**

No. 84–6519.

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1985.

Decided Oct. 28, 1985.

Kenneth R. Berman, Boston, Mass. (David S. Mortensen, Hale & Dorr, Boston, Mass., Kenneth C. Hanson, Hanson & Anderson, Columbia, S.C., on brief), for appellant.

Donald J. Zelenka, Chief Deputy Atty. Gen., Columbia, S.C. (T. Travis Medlock, Atty. Gen., Columbia, S.C., on brief), for appellees.

Before WINTER, Chief Judge, and WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

Kevin H. Griffin appeals from the denial of his petition for writ of habeas corpus and pursues fourteen assignments of error. However, we affirm.

The essential facts from Griffin's point of view regarding his arrest and conviction are not in dispute. Griffin was arrested on September 19, 1975 in Charleston, South Carolina and was charged with rape of a 13 year old school girl. On September 23, 1975, Public Defender Dale Cobb first became aware of Griffin's case when he was called to attend a line-up at the Charleston County Jail in which Griffin appeared. Cobb interviewed Griffin on several occasions between September 23 and November 11, 1975. On November 11, 1975, Cobb represented Griffin at a preliminary hearing where the prosecutrix and a police officer testified. After that hearing, Griffin and Cobb discussed on two occasions whether Cobb would continue to represent Griffin in the matter. Griffin told Cobb that he was aware of Cobb's heavy caseload and that he thought he could raise enough money to hire private counsel upon his release on bond. Griffin indicated that he would be able to retain private counsel if he worked double shifts as a taxi driver and borrowed funds from his father. Cobb advised Griffin to seek other counsel. Griffin was released on bond around November 20, 1975. Based on Griffin's desire to retain private counsel and also Cobb's determination that Griffin was not indigent, Cobb sent Griffin a letter confirming their previous discussions on the matter, stating that Griffin no longer qualified for representation by the Public Defender's Office and that he should retain other counsel. Thereafter, Cobb closed Griffin's file and took little further action on the case besides preparing to formally withdraw from representation. Meanwhile, while out on bond, Griffin sought to retain an attorney but none of the attorneys he talked to, save one, agreed to represent him.

Cobb presented his motion to withdraw as Griffin's counsel on December 1, 1975. The motion was denied. During the hearing on Cobb's motion to withdraw, Cobb learned that Griffin would be indicted that day. Cobb had previously advised Griffin, however, the date of the term of court so there was nothing unexpected about the December 1st indictment. Cobb also learned on December 1 that Griffin would be arraigned shortly after indictment and that the court would permit the solicitor to call Griffin's case no earlier than December 4. On December 3, 1975, Cobb asked the court to continue Griffin's case because he had been in court continuously since December 1 and was unprepared for trial. The court denied the request and told Cobb that another public defender, G. Dan Bowling, should assist Cobb by preparing the legal issues for trial. Prior to that date,

Bowling had no familiarity with the facts of Griffin's case.

On December 3, 1975, Cobb was in court on another matter until 11:00 or 11:30 p.m. Thereafter, Cobb and Bowling worked together on Griffin's case until about 2:00 a.m. In the time between indictment and trial, counsel met with Griffin once and spent about ten minutes with him. In the time between the preliminary hearing and trial, Cobb did not further investigate the case. When Griffin's case was called for trial on December 4, both Cobb and Bowling formally moved for a continuance, citing, among other things, the lack of adequate preparation time and the lack of an opportunity to talk with Griffin to determine whether to prepare him as a witness. The court denied the motion. Soon thereafter, trial began. Counsel presented no witnesses on behalf of the defendant and, after a one-day trial, the jury found Griffin guilty of rape.

However, the essentially negative statement of facts above, and upon which Griffin wholly depends, does not tell nearly the whole story. Cobb got into the case at the time of the line-up and was in it continually until after the trial. He attended the line-up, about which no question is made. A preliminary hearing was set for November 11, following the September 23 line-up. Between the time Cobb entered the case on the 23rd and the preliminary hearing, he talked to Griffin on several occasions, both at the jail and over the telephone. Griffin gave him the names of witnesses that Cobb should interview and Cobb did interview some of them and had his investigator talk to others whom he subsequently talked to. Cobb also had his investigator look for two particular witnesses in a particular type of pickup truck, which might have been of relevancy in the case, and had his investigator look for a woman who operated a gas station which Griffin apparently had been in on the day of the offense. The prosecutor also opened his file to Cobb and Cobb reviewed it. Cobb interviewed the police officers who were involved in the arrest and search, and examined whatever statements Griffin had made. Cobb also interviewed the woman with whom Griffin was living at the time, as well as another ladyfriend of Griffin's. Either Cobb or Cobb's investigator talked to the witnesses that Cobb knew he wanted to talk to prior to the preliminary hearing, without regard to whether they would have been witnesses for the State or for Griffin. So the picture painted by the negative statement of facts is not a true one, at least through the stage of the preliminary hearing. Griffin's lawyer, Cobb, was fully and thoroughly prepared in his conduct of the case. Following the preliminary hearing as related above, Griffin told Cobb he would rather have a private attorney and could afford one, and Cobb came to the conclusion that in any event Griffin did not meet the standards for appointment of counsel for an indigent. It was during this period of time and well before the trial date that Cobb advised Griffin of the date of the term of court and that he should get an attorney "as soon as possible." It is true that Griffin unsuccessfully talked to one or more attorneys who would not accept employment, but he was successful in the employment of one. That attorney accepted employment subject to getting the case continued. He came into the trial court, apparently either the day before or the day after Cobb made his unsuccessful motion to be relieved, and made a motion for continuance, which was denied, at which point he withdrew from the case. We should add that Cobb reviewed the tape recording of the preliminary hearing prior to the trial and subpoenaed his witnesses. Thus, the trial court was placed in the dilemma of continuing a case, in which the defendant had opportunity and funds to employ an attorney but had not, or of trying it. It chose to try the case and not to relieve from his duties the previously appointed attorney who had thoroughly investigated the matter.

Two other attorneys, Richard Rosen and Robert Rosen, were appointed to represent Griffin on the direct appeal of his conviction. The South Carolina Supreme Court affirmed his conviction on January 11, 1977, and the United States Supreme Court

denied certiorari on June 20, 1977. Thereafter, Griffin made an application for post-conviction relief in state court. Full evidentiary and supplemental hearings were held in June and August 1979, and the court denied Griffin's petition for relief. The South Carolina Supreme Court affirmed the lower court's denial of the petition, and the United States Supreme Court denied Griffin's petition for certiorari.

On April 14, 1983, Griffin filed his petition for writ of habeas corpus in the district court. As grounds for relief, the petition alleged: ineffective assistance of trial and appellate counsel; violation of Griffin's fourth, fifth, and fourteenth amendment rights; and denial of a full and fair hearing in the state courts on various constitutional claims. The case was referred to a United States Magistrate, who issued a report and recommendation that Griffin's application for relief be denied. The district court granted the State's motion for summary judgment and issued a certificate of probable cause to appeal.

On appeal, Griffin presents fourteen assignments of error as previously noted, among them being that he received ineffective assistance of trial counsel; his conviction violated his fourteenth amendment right to due process of law because it was for a crime not charged in the indictment; his conviction violated his fourth and fifth amendment rights; and he was denied effective assistance of appellate counsel.[1]

*Ineffective Assistance of Trial Counsel*

■ Griffin asserts that the circumstances surrounding his case justify the presumption that trial counsel was ineffective under a principle the Court recognized but refused to apply in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *Cronic*, the Court recognized that even though it is to be presumed

that counsel is competent, certain circumstances may indicate a breakdown in the adversarial process which will justify a presumption of ineffectiveness without inquiry into counsel's actual performance at trial. 466 U.S. at ———— ————, 104 S.Ct. at 2045–50. The Court stated:

> Circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of trial.

*Id.* 466 U.S. at ———— ————, 104 S.Ct. 2047–48, *citing Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

Griffin points to several claims which, he argues, justify the presumption of ineffectiveness: minimal pre-indictment investigation by counsel; continuous presence of counsel in court on other matters in the three-day period between indictment and trial; failure of counsel to obtain a transcript of the hearing;[2] limited time to talk with Griffin in the time period between the preliminary hearing and the morning of trial; and the inability of counsel appointed on the day before trial to present constitutional grounds for the suppression of evidence since counsel had no knowledge of the facts of Griffin's case when he researched the legal issues. Griffin asserts that if he is correct as to these claims, the likelihood that any lawyer could have provided effective assistance is so remote that prejudice should be presumed without inquiry into counsel's actual performance at trial.

We do not think that the circumstances of the case resulted in a breakdown of the adversarial process. The district court

---

1. Griffin, among other claims, contends that South Carolina's rape statute in effect at the time of his conviction violated the equal protection clause of the fourteenth amendment and that the sentencing procedure used by the court in his case was unconstitutional. We have not addressed these other claims in the text of the

opinion because we are of opinion they were adequately disposed of by the district court.

2. Cobb reviewed the tape recording of the preliminary hearing before the trial, and we are not told, even now, what testimony of the prosecutrix would have been impeached by it.

found that despite the short time to prepare between the December 1st indictment and the December 4th trial, a competent attorney could have provided effective assistance because there was ample opportunity to prepare in the time period between counsel's appointment on September 23 and the subsequent determination following November 11 that Griffin was not entitled to public defender assistance. Accordingly, the court found that the adversarial system did not foreclose any opportunity for counsel to provide effective assistance and, as a result, ineffectiveness could not be presumed.

Griffin takes issue with this finding by arguing that notwithstanding the ample opportunity to prepare between September 23 and November 11, there existed no basis for any meaningful investigation to occur during this period because Griffin had not yet been indicted and the public defender, handling at that time between 100 and 140 cases,[3] was not in a position to devote his limited time to investigating the case prior to the preliminary hearing. In addition to counsel's claimed minimal investigation during the period the district court described as a period in which counsel had an ample opportunity to prepare, Griffin further asserts that the circumstances surrounding his representation in the time between the preliminary hearing and trial necessitate a presumption of ineffectiveness. In this regard, Griffin states that no investigation in fact occurred between the preliminary hearing and indictment and that in the three-day period between indictment and trial, Cobb's time was occupied in trying other felony cases. Griffin thus contends that counsel's claimed failure to investigate was a breakdown in the adversarial process that constituted ineffectiveness *per se*.

We disagree because a review of the circumstances surrounding Griffin's representation reveals to us that in the same circumstances it was not unreasonable to expect that a competent lawyer could render effective assistance of counsel. *See Cronic*, 466 U.S. at ––– – –––, 104 S.Ct. at 2047–48. Cobb participated in the line-up in which Griffin appeared; Cobb interviewed two police officers about the case and interviewed Griffin on several occasions. Cobb obtained the names of several witnesses whom Cobb later interviewed himself or through his investigator; Cobb reviewed the prosecutor's file summary of the case and had access to all prosecution material at least two weeks prior to the preliminary hearing; Cobb represented Griffin at the preliminary hearing during which the prosecutrix testified about the incident and an investigating officer testified about Griffin's arrest, investigation of the case, and the search and seizure of evidence; Cobb reviewed the tape recording of the preliminary hearing prior to trial and subpoenaed his witnesses.

Notwithstanding counsel's not devoting much time to the case following the preliminary hearing and the short time between indictment and trial, because counsel had the opportunity to prepare the defense and did do so to a certain degree, the trial court's refusal to grant a continuance did not convert the appointment of counsel into a merely formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. See *Cronic*, 466 U.S. at ––– – –––, 104 S.Ct. at 2042–46. Evidence and witnesses were accessible to defense counsel. Counsel participated in all critical stages of Griffin's trial. We do not think the circumstances here rise to the level of those surrounding circumstances that the Supreme Court found in the landmark case of *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), to constitute a denial of an effective advocate, rendering a trial inherently unfair.

Even if there is not sufficient doubt cast upon the adversarial process to justify a presumption of ineffective counsel, Griffin

---

**3.** We are not impressed by the claim of a heavy caseload. Everyone connected with the judicial system labors under the same handicap.

asserts that upon evaluation of counsel's performance under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we nevertheless should find that counsel was ineffective. He contends that counsel's performance was deficient in several respects and that these failures prejudiced his defense. Essentially, Griffin asserts that his counsel's performance was deficient because counsel was unable to prepare for trial. In this respect, he claims that counsel failed to locate witnesses who would have testified that the prosecutrix had a poor reputation for truth and veracity, that she had ingested mind-altering drugs which could have affected her ability to perceive, and that contrary to her trial testimony, the prosecutrix was not a virgin prior to the incident. He also claims that counsel had no opportunity to obtain a transcript of the prosecutrix's testimony from the preliminary hearing and, as a result, could not impeach her with any prior inconsistent statements. Because of counsel's failure to locate witnesses and to obtain the preliminary hearing transcript, Griffin contends that the trial outcome in all likelihood would have been different but for the errors since, as he maintains, the conviction rested entirely on the credibility of the prosecutrix's trial testimony. Griffin also contends that had counsel been "better versed" on fourth amendment law and had counsel presented the court with a fifth amendment violation, the defense probably could have suppressed evidence seized from the defendant's residence after the defendant consented to the search during the course of custodial interrogation. In essence, Griffin argues that he was denied effective assistance of counsel with respect to the fourth and fifth amendment claims because Bowling, additional counsel who was appointed the day before trial, failed to present grounds for excluding prejudicial evidence since Bowling had inadequate time to conduct the necessary legal research and was unfamiliar with the facts.

■ To the extent that Griffin bases his ineffective assistance of counsel claim on inadequate time for counsel to prepare, we find that by indicating to Cobb on at least two occasions his desire to retain private counsel, Griffin was the cause of his own dilemma and may not now assert lack of adequate preparation time as a ground for habeas relief. *See United States v. Blue Thunder,* 604 F.2d 550, 555 (8th Cir.), *cert. denied,* 444 U.S. 902, 100 S.Ct. 215, 62 L.Ed.2d 139 (1979) (when defendant thwarts counsel's investigation of case and is principal cause of counsel's failure to confer with defendant on a more frequent basis, defendant has no ineffective assistance of counsel claim on this ground); *see also United States v. Davis,* 604 F.2d 474, 481 (7th Cir.1979) (no abuse of discretion when court denied motion for continuance since defendant was responsible for lack of preparation).[4]

■ Furthermore, to the extent that Griffin now claims that counsel would have discovered various witnesses who could have impeached the credibility of the prosecutrix if counsel had had more time to prepare, we additionally reject this contention on federal habeas review since Griffin was offered the opportunity to present these alleged witnesses to the state postconviction court and failed to produce same. We note in passing that Griffin's attorneys in the state post conviction hearing are his present attorneys.[5]

### Due Process Violation

Griffin argues that his conviction was an unconstitutional violation of his fourteenth amendment right to due process because he was convicted of a crime not charged in the indictment. Specifically, he claims that he was charged with rape and was convicted of statutory rape. Since the issue of variance was not raised in the state criminal trial or on direct appeal, he argues that the

---

4. We should add at this point that our review of the record does not indicate that trial counsel was ineffective.

5. This evidence came to Cobb's attention some ten months after the trial.

claim is nevertheless reviewable in the federal courts because there was cause for the failure to raise the issue and actual prejudice that resulted therefrom. *See Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 782 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977); *Carrier v. Hutto*, 724 F.2d 396 (4th Cir.1983). As for the prejudice element, Griffin claims that the court's jury instructions resulted in his conviction for a crime not charged in the indictment and that such was a prejudicial denial of due process. Notwithstanding, upon consideration we find that Griffin has failed to show actual prejudice and we therefore need not address the issue of cause.

Griffin was indicted for the crime of rape under section 16–71, Code of Laws of South Carolina (1962). He contends that in effect he was convicted of statutory rape under section 16–80, Code of Laws of South Carolina (1962), because the trial judge did not charge that consent or marital status of the female were elements of the crime of rape.[6] Although the elements of the two crimes are similar when the victim is under fourteen years of age, the two offenses are separate and distinct. *See State v. Haddon*, 49 S.C. 308, 27 S.E. 194, 197 (1896).

Under section 16–80, a defendant may be convicted of statutory rape merely upon proof that he had sexual intercourse with a female under the age of sixteen. *See State v. Whitener*, 228 S.C. 244, 89 S.E.2d 701, *cert. denied*, 350 U.S. 861, 76 S.Ct. 101, 100 L.Ed. 764 (1955). S.C.Code Ann. § 16–3–650 (1976) (now repealed). A conviction for rape, however, requires further proof. Section 16–71 contains the elements of the crime of rape and requires proof of an act of intercourse and proof that such act was performed by force or without the victim's consent. Because section 16–71 is subject to Article III, section 33 of the 1962 South Carolina Constitution which provides that

an unmarried woman under the age of fourteen is incapable of consenting to sexual intercourse, the South Carolina Supreme Court has held that for purposes of proving rape the prosecution need only show that the defendant had sexual intercourse with a female under the age of fourteen. *State v. Haddon, supra*. Even though the state constitutional provision governing the age of consent specifically provides that unmarried females under the age of fourteen are incapable of giving informed consent to the act of sexual intercourse, the South Carolina court in *State v. Haddon* found that the prosecution had proven rape of a thirteen year old girl notwithstanding the fact that it did not introduce evidence of the girl's marital status. In holding that the lower court properly overruled a defendant's motion for new trial on the ground that there was no evidence of the girl's marital status, the *Haddon* court reasoned that the rape conviction was nevertheless proper because the prosecution offered evidence which "showed facts and circumstances tending powerfully to establish that she was unmarried." 49 S.C. at 313–16, 27 S.E.2d at 196. In this regard, the court noted that there was no evidence suggesting that the victim was married or that there was any issue on such point. *Id.* To the contrary, the *Haddon* court cited several facts and circumstances in evidence which it relied upon to find "to a moral certainty that [the victim] was a child unmarried," including the fact that the thirteen-year old victim had the same surname of her parents and that she lived with her mother, grandmother, and at least one sibling. *Id.*

Griffin contends that his conviction for rape was improper because the trial judge failed to charge the jury that it could reach a guilty verdict only upon a finding of force or lack of consent or, in the alternative, a finding that the victim was an unmarried female under the age of fourteen.

---

**6.** S.C.Code Ann. §§ 16–3–651 *et seq.* (1985) contains the current statutory provisions regarding criminal sexual conduct. The new criminal sexual conduct provisions represent a legislative

attempt to redraft and consolidate the statutory law relating to sexual offenses in South Carolina. *State v. Summers,* 276 S.C. 11, 274 S.E.2d 427, 428 (1981).

*See State v. Whitener, supra.* Because the jury was not instructed on what constitutes force and additionally because there was no evidence on the victim's marital status, Griffin claims that he was effectively convicted of statutory rape, a crime not charged in the indictment. He further asserts that the trial court compounded the harm by punishing him for rape if, as he argues, he was convicted of statutory rape. The harm is present he says because under section 16–80 the jury was entitled to recommend him to the mercy of the court, and upon such a recommendation he would have received a punishment that could not have exceeded fourteen years.

■ We reject Griffin's due process claim because we think that under South Carolina's interpretation of its own criminal rape provisions, there was no variance between the indictment and proof at trial that he was convicted of the crime with which he was charged. As was the case in *Haddon,* even though the indictment did not charge that the victim was unmarried, there is nothing in the record to indicate that the victim's marital status was at issue. Furthermore, as in *Haddon,* we think the prosecution introduced evidence showing facts and circumstances "tending powerfully to establish that [the victim] was unmarried." *Haddon, supra.* The victim here testified that she was thirteen years old at the time of the incident and that she lived with her mother, stepfather, two stepbrothers, and one stepsister. She further testified that before she moved in with her mother, she had lived with her father in Georgia. Since the South Carolina Supreme Court in *Haddon* determined on similar facts and circumstances that a conviction for rape was proper since marital status was not in issue, we must rely on that court's interpretation of its own law to conclude that Griffin's conviction for rape was similarly proper. Accordingly, Griffin has failed to show that he was prejudiced by any omission on the part of trial counsel in failing to object to the court's instruction to the jury.

## Fourth and Fifth Amendment Issues

Griffin claims that he was denied his rights guaranteed by the fourth amendment when the trial court admitted certain evidence seized during the course of two warrantless searches of Griffin's residence. He claims that any consent that he allegedly gave to search was the product of custodial interrogation since it was obtained while Griffin was in custody and after he had requested the presence of counsel. The consent, he asserts, was a violation of his fifth amendment rights and, as such, the evidence seized was unconstitutionally tainted and should have been suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Griffin contends that he requested an attorney after his arrest and that he called an attorney who advised him to say nothing to police officers. The attorney, however, would not represent Griffin. He claims that notwithstanding his request for counsel, he was subject to a custodial interrogation during which he allegedly consented to the search of his residence for the clothes he had worn on the day of the incident. Griffin accompanied two police officers to his apartment and he gave to the officers a pair of slacks and a shirt that had been wadded up in a pillowcase. Additionally, on the way back to the police station, Griffin pointed out his car to the officers and he drove it to the station where it was later photographed by the police. Soon after Griffin returned to the police station, the same two officers who had gone with Griffin to his apartment returned to the apartment and retrieved some underwear from the pillowcase they had seen earlier. On this occasion, Griffin's roommate, whose apartment it was, permitted the officers to enter the apartment.

The solicitor offered the clothing and car photograph into evidence to corroborate the prosecutrix's testimony concerning the identity of the man who raped her. Griffin's trial counsel objected to the introduction of the evidence and conducted a sup-

pression hearing on the issue. While trial counsel did not expressly and in terms invoke the fifth amendment as a ground for suppressing the evidence, counsel argued that the alleged consent to search was the product of coercion and therefore involuntary, necessarily invoking the fifth amendment. After hearing the testimony of several witnesses at the suppression hearing, including the police detective who arrested Griffin, read him his rights, and obtained Griffin's permission to get the clothing; the petitioner Griffin; and the woman who permitted police officers to enter for a second time the apartment which she shared with Griffin; the trial judge specifically found that Griffin had made a valid waiver of the search warrant requirement because he had voluntarily consented to the search.[7]

■ Griffin's appellate counsel did not appeal the fourth and fifth amendment issues to the South Carolina Supreme Court on direct review. Griffin asserts, however, that federal habeas corpus review of the fourth and fifth amendment claims is not barred because there was cause for counsel's failure to appeal these issues and that there was actual prejudice which resulted. *Engle v. Isaac,* 456 U.S. at 129, 102 S.Ct. at 1572; *Wainwright v. Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506–07; *Carrier v. Hutto,* 724 F.2d at 401.

On the issue of appellate counsel's failure to raise the fourth amendment claim on appeal, Griffin contends that the cause for the failure was ineffective assistance of appellate counsel. *Carrier,* 724 F.2d at 401. He claims that appellate counsel unreasonably determined that presentation of the fourth amendment claim would jeopardize Griffin's chances of prevailing on the only claim asserted in the appeal, ineffective assistance of trial counsel. This, he contends, constituted ignorance or inadvertence amounting to *Wainwright* cause. However, we think it is clear that Griffin's counsel deliberately chose to present only

one claim on appeal, ineffective assistance of trial counsel, and that this claim embodied *inter alia* Griffin's fourth amendment contention. We do not believe that this was an unreasonable exercise of professional judgment. Simply put, we do not think that appellate counsel's specific tactic in choosing which issues to assert on appeal "amounted to a breach of the sixth amendment in order to overcome the *Wainwright* bar." *See Carrier,* 724 F.2d at 401. Thus, we find that Griffin has not shown cause for failing to assert the fourth amendment issue on appeal, and habeas corpus review is therefore barred.

Additionally, we note that review of the fourth amendment claim is barred by *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), because the state provided Griffin an opportunity for full and fair litigation of the claim, and we do not think that Griffin has shown reasons or facts to support his contention that he did not have the opportunity for full and fair litigation.

■ We also find that Griffin has failed to overcome the *Wainwright* bar with respect to our review of the merits of the fifth amendment claim because he has not shown cause for failing to appeal the issue. He asserts that introduction of the evidence seized after the consent search was error since the police interrogated Griffin after he had requested the presence of an attorney. While trial counsel did not explicitly object to admission of the evidence on fifth amendment grounds, he nevertheless did object to its admission on the ground that the consent was involuntary. And while appellate counsel did not submit the issue on appeal, counsel did present the fifth amendment claim in the context of the ineffective assistance of trial counsel claim presented on appeal. Griffin claims that there was cause for trial counsel's failure to assert this issue before the court because he was unable to prepare himself on

---

**7.** On the discrete question of whether Griffin consented to the search, the evidence is in little conflict. Griffin testified he consented to the search after an officer told him he had a search

warrant. The officer testified that Griffin consented to the search after being told the officer could get a search warrant.

the legal issues and was unfamiliar with the facts. He further asserts that appellate counsel was ineffective in not presenting the issue on appeal. As we held with respect to the alleged cause for counsel's failure to appeal the fourth amendment claim, we do not think Griffin has shown cause for failing to appeal the fifth amendment issue. While trial counsel conducted the suppression hearing in which he raised the issue of the validity of Griffin's consent to search, the court determined that, based on all the facts and circumstances, Griffin's consent was voluntary. On appeal, Griffin's appellate counsel deliberately chose to embody the fifth amendment claim in the larger context of ineffective assistance of counsel claim and emphasized in their brief to the South Carolina Supreme Court that once Griffin had asked for an attorney, all questioning should have ceased. We do not think Griffin has shown that counsel's actions emanated from ignorance or inadvertence. To the contrary, both trial and appellate counsel presented the fifth amendment issue in the context of their respective theories of representation. Furthermore, the attorneys' respective presentations on the issue did not amount to a breach of the sixth amendment. *See Carrier*, 724 F.2d at 401. Accordingly, since we have found an absence of cause, federal habeas review of the fifth amendment issue is barred.

### Ineffective Assistance of Appellate Counsel

■ Griffin claims that he received ineffective assistance of appellate counsel because of the failure of counsel to appeal all trial errors other than ineffective assistance of trial counsel. In this regard, he specifically refers to counsel's failure to appeal the fourth and fifth amendment issues and in his reply brief mentions specifically counsel's failure to present the issue of the discrepancy between indictment and jury charge. The Supreme Court in *Evitts v. Lucey*, —— U.S. ——, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), recently held that due process of law requires that a defendant receive effective assistance of appellate

counsel on his direct appeal. The Court, however, also has held in *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), that appellate counsel has no constitutional duty to raise every nonfrivolous issue on appeal if counsel, as a matter of professional judgment, decides not to raise such issue on appeal. *Id.* at 751–54, 103 S.Ct. 3312–14. The *Barnes* Court reasoned that counsel must be allowed to exercise his reasonable professional judgment in selecting those issues most promising for review and, in this respect, specifically stated that "[a] brief that raises every colorable issue runs the risk of burying good arguments...." *Id.* at 752–53, 103 S.Ct. at 3313.

We find that in this case the record is clear that Griffin's appellate counsel made an informed decision based on reasonable professional judgment not to pursue particular issues on appeal. Counsel Robert Rosen testified at the state post-conviction hearing that he and his co-counsel decided it was in Griffin's best interest not to raise every issue on appeal and that they did not want to "clutter up the brief" with issues they determined were less meritorious than the ineffective assistance of trial counsel claim. He further testified that they chose to embody the fourth and fifth amendment issues in the ineffective assistance of counsel claim on appeal. An examination of their brief in the South Carolina Supreme Court corroborates that testimony. Given that this was a strategic decision on appellate counsel's part based on what we consider to be reasonable professional judgment, it is not proper for us to second-guess the judgment of appellate counsel so as to impose a duty to raise every colorable claim. *See id.* at 754, 103 S.Ct. at 3314.

Additionally, to the extent that the record does not indicate whether appellate counsel deliberately chose not to present on appeal the claim that Griffin was not convicted of the charge for which he was indicted, we address and reject this claim for an added reason. Under the test of ineffective assistance of counsel stated in *Strickland v. Washington, supra*, a de-

fendant must show that the deficient performance of counsel prejudiced the defense. 466 U.S. at ——–——, 104 S.Ct. at 2063–65. As we have found previously with respect to whether Griffin was actually prejudiced for *Wainwright* purposes by counsel's failure to present and preserve the issue of variance, Griffin's conviction was not an unconstitutional denial of due process because under South Carolina law the jury charge was proper, and thus there was no variance between the indictment and proof at trial. Similarly, beyond the context of establishing no prejudice to lift the *Wainwright* bar, we find on this reasoning that Griffin was not prejudiced by counsel's failure to appeal, and therefore we reject his ineffective assistance of counsel claim on this basis as well.

We have considered the other grounds for relief asserted by Griffin and are of opinion they are without merit.

The judgment of the district court is

AFFIRMED.

HARRISON L. WINTER, Chief Judge, dissenting:

*United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) teaches that the effective assistance of counsel is basic to the ability of an accused to receive a fair trial—a right guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States. While the burden is ordinarily on the accused to show a violation of this right, there are circumstances in which a violation of this right is presumed. Two examples are the complete denial of counsel at a critical stage of the trial, and a complete failure to subject the prosecution's case to meaningful adversarial testing. *Cronic*, 80 L.Ed.2d at 668. But, as *Cronic* carefully points out, these two examples are not exclusive:

> Circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is

appropriate without inquiry into the actual conduct of the trial.

80 L.Ed.2d at 668.

As I read and analyze the record in this case, it is one where the likelihood that defense counsel could provide effective assistance is so small that a presumption of prejudice is appropriate. I am therefore led to conclude that Griffin's petition for a writ of habeas corpus should be granted. From the majority's contrary conclusion, I respectfully dissent.

## I.

The issue of whether counsel could likely provide effective assistance is largely factual, and as the majority and the district court point out, the facts in this case are largely undisputed.

Griffin was convicted of rape in a one-day trial. He was indicted on Monday, December 1, 1975, and, represented by a court-appointed public defender Dale Cobb, he was tried and convicted on Thursday, December 4, 1975. He was immediately sentenced to hard labor for forty years with service of only two days suspended. In the two days between appointment to represent Griffin and Griffin's trial, Cobb was constantly in trial until late evening hours representing other defendants. On December 3, another public defender, George Dan Bowling, was also appointed to assist Cobb in preparing the legal issues for Griffin's trial, but Bowling had no factual knowledge of Griffin's case until the night before the trial began. Cobb was required to be in court on December 3 until 11:00 or 11:30 p.m., and he could tell Bowling nothing about the case until then. They worked on Griffin's case that night until 2:00 a.m. and began the trial the next day after their renewed motion for a continuance was denied. They presented no witnesses in Griffin's defense. Indeed, their testimony that they lacked the time to reflect upon the case or to determine if defenses were available or even to prepare Griffin as a witness is not controverted.

It is true that Cobb had other contact with Griffin prior to December 1, 1975, but an analysis of those contacts and the events prior to December 1 shows that they provide no basis on which Cobb or Bowling could reasonably be expected to be effective as defense counsel.

Griffin was arrested on September 19, 1975 on a charge of rape. On September 23, Cobb had his first contact with Griffin when Cobb was telephoned by the police to come to the county jail for a lineup involving Griffin, although as a technical matter Cobb was appointed, without his knowledge, on September 19. At the time, Cobb was representing by court appointment 121 other clients and was working as much as 18 hours per day. He was assigned new clients at the rate of 4–6 per week. He had no opportunity to interview Griffin until the next day when he talked to him "briefly" and "just pre-emptively found out something about the case." The identity of the prosecutrix was disclosed at the lineup, but Cobb talked to no one about her prior to the preliminary hearing.

A preliminary hearing was scheduled on several occasions during October but had to be postponed because of Cobb's other court commitments or the unavailability of the police. Prior to the preliminary hearing, Cobb talked to Griffin at the jail and on the telephone several times.· Griffin suggested the names of some witnesses that he wanted Cobb to talk to. Cobb talked to one with whom Griffin had spent some time on the date of the alleged rape, but the information that he obtained was relatively meaningless since Cobb did not know at what hour the prosecutrix would fix as the time of the crime. Similarly, he talked to two others, but they had nothing substantial to offer at that time. He also assigned an investigator to look for a particular truck which Griffin suggested had contained two men who had seen him on the day of the crime. Cobb was shown the prosecutor's file immediately prior to the preliminary hearing. Ordinarily, the public defender makes little investigation before the preliminary hearing because it is then that he learns about the prosecution's case.

The preliminary hearing was finally held on November 11, 1975. Cobb talked to Griffin then and again on November 13. They talked about whether Griffin would be willing or able to make bail, and Griffin said that he wanted his release and that he could get the necessary funds from his father or friends. Also, they discussed Griffin's representation. Griffin said that he knew of the case load of all of the public defenders, that he thought a private attorney would probably have more time to devote to his case and that if he was released, he thought that he could work a double shift driving a taxicab and, with supplementation from his father, earn enough to engage counsel. Cobb agreed to this plan of action and wrote Griffin a letter saying that when he was released he would no longer qualify for representation as a indigent and he should seek another attorney. Cobb then closed the case and did nothing more about it until December 1, 1975.[1]

Griffin was released on bond around November 20, 1975. He worked double shifts and, attending appointments between shifts, he tried to engage five lawyers. Only one indicated a willingness to represent him, and that one subsequently declined when the trial judge refused a motion for a continuance to prepare to trial.

On December 1, 1975, Cobb presented to the trial court a formal motion to withdraw as Griffin's counsel. Similar motions in other cases were always granted, but the motion in Griffin's case was denied, the trial court finding that Griffin had not earned enough money since his release to employ private counsel and that he was therefore indigent. On that day, Cobb learned for the first time that Griffin would be indicted that same day, arraigned immediately thereafter, and tried on December 4. Cobb was in court on December

---

1. When released, Griffin made $125–150 per week. At the time, the standard to qualify for appointment of counsel as an indigent for a person having Griffin's support obligations was earnings less than $350 per month.

1 until 6:00 p.m., and he was advised that another assigned client charged with armed robbery would be tried on December 2. Cobb returned to his office on December 1 to prepare for the trial the next day, and the trial on December 2 was not concluded until approximately 10:00–10:30 p.m. that night. On December 2, Cobb was advised that the trial in another case involving three defendants charged with housebreaking, grand larceny, and receiving stolen goods would begin the next day so that on the night of December 2, he again returned to his office to prepare for the December 3 trial and worked until approximately midnight.

The trial on December 3 did not terminate until 10:30–11:30 that night. During the course of the trial, Cobb advised the trial judge that he was not ready to try Griffin the next day, and he informally requested a continuance. This was denied, the trial judge taking the position that cases would be tried as set by the solicitor but that Cobb should get help from someone else in his office to prepare him for the legal issues that the case would present. It was thus that Bowling was brought into the case and told to prepare the legal issues to be submitted at the trial.

Cobb left court on December 3 at 11:00–11:30 p.m. and worked with Bowling in his office until 2:00 a.m. This session was the first time that Cobb had the opportunity to tell Bowling about the facts of the case as they were known to Cobb. Cobb's knowledge, however, was meager. After gaining some knowledge of the state's case, he had talked to Griffin only 5–10 minutes on December 1 when Griffin was arraigned, and they did not discuss the facts of the case. After December 1, Cobb may have sent an investigator out to contact witnesses, but he talked to none of the witnesses himself. He did not obtain a transcript of the preliminary hearing for possible use in impeaching the prosecutrix because his secretary was too busy preparing papers for the December 2 and December 3 trials to tran-

scribe it. During the night of December 3, Cobb may have talked to a friend of Griffin's, but he did not talk nor had he talked to any prosecution witness, the police, the minister of the church in the community where the prosecutrix lived, the principal of her school, or any of her teachers.

On the morning of the trial (December 4), Cobb and Bowling again sought a continuance on the ground that they had insufficient time to prepare Griffin's case. They cited Cobb's continued presence in court and Bowling's less than 24-hour involvement in the case. They reported that they had not talked to Griffin until that morning and had reached no decision as to whether he would testify. Even the prosecutor conceded that they had a problem. Ordinarily, trials are not scheduled immediately after indictment except where the accused is incarcerated. Griffin was released on bail, and Cobb was prepared to try other cases on that date. The continuance was denied, however, solely on the ground of prosecutorial convenience. The trial began immediately after denial of the continuance. Although there was participation and cross-examination by Cobb and Bowling based upon their limited knowledge of the case, no defense theory was advanced, no defense witnesses were presented, and Griffin was convicted.

In the course of the trial, a legal issue was presented which Cobb and Bowling failed to recognize and to raise. There was evidence that after Griffin was arrested he requested an attorney, but notwithstanding his request, interrogation of him continued at the instance of the police, in the course of which Griffin consented to a warrantless search of his apartment during which evidence used at his trial was seized. While Cobb and Bowling contested the validity of the search on Fourth Amendment grounds, they were apparently unaware that Griffin also had a Fifth Amendment claim since he had requested counsel. *See Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981); *Michigan*

*v. Mosley*, 423 U.S. 96, 101 n. 7, 96 S.Ct. 321, 325 n. 7, 46 L.Ed.2d 313 (1975).

A factual question for which they were not prepared was that because of a cyst at the base of his spine, Griffin wore silk or nylon underwear rather than the more customary cotton. Absent the ability to explain, Cobb and Bowling were unable to counter the prosecution's repeated references to the fact that Griffin wore "ladies panties" suggesting that Griffin was sexually deviant.[2]

Subsequent to the trial, Cobb and Bowling became aware of evidence which could have been used to impeach the prosecutrix. At the preliminary hearing, she had testified that she was chaste and did not use drugs, and at the trial she again asserted her virginity. After the trial, Cobb learned from a neighbor of the prosecutrix, a Baptist minister in the community in which she lived and two state witnesses at the trial that neither statement was true. In the words of Cobb, this evidence, if known before trial, "would have been extremely important ... [it] could have been used to impeach her credibility or what she perceived happened did not happen during the time of the incident ..."

## II.

On the facts that I have set forth, I can only conclude that while Griffin had in attendance at his trial two lawyers who purportedly represented him, they could not have conceivably afforded him effective representation. They were grossly unprepared for trial through no fault of their own or fault on the part of their client. With the work pressures on Cobb, he could not have been expected to investigate thoroughly or carefully the case prior to the date of the preliminary hearing when he ascertained both that there was a case against Griffin sufficient to hold him for the grand jury and what were the facts of that case. Contemporaneously with the preliminary hearing, Griffin was admitted to bail, and the facts relating to his financial situation were such that he was no longer entitled to the services of a public defender in addition to his desire for private counsel. Cobb could hardly be expected to prepare himself more when he quite reasonably expected that he was no longer counsel. Griffin was released on a Saturday night, and he began his search for a lawyer the following Monday. He was refused representation by five lawyers in the three-week period between his release and his indictment. There is no reason to believe that when he was working a double shift to generate income to pay a lawyer that he could have done more in finding one.

The shortness of time between the indictment and the actual trial coupled with the court obligations of Cobb make self-evident the fact that it was impossible for Cobb, even with the aid of Bowling, to prepare even minimally adequately for trial. *See State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979).

Thus I would conclude that Griffin is entitled to a presumption of ineffectiveness of his representation and that there was ineffectiveness per se. I would direct the writ to issue.

---

**2.** It is perhaps significant that in sentencing Griffin immediately after the trial, the presiding judge stated that Griffin had an "emotional disorder in regard to sexual matters." There had not been any psychiatric or medical evidence that Griffin suffered from any such emotional disorder.