MICHAEL, Circuit Judge,
dissenting:
Eric Glover, who was charged with kid-naping and other serious crimes, was denied effective assistance of counsel in the summer of 1991, when the public defender system in Williamsburg County, South Carolina, broke down completely. Nothing was done on Glover’s case until the third in a succession of lawyers was appointed to represent him on June 17, 1991, two days before trial. Glover was tried and sentenced to life in prison on June 19, *281 1991, before his new lawyer had an opportunity to contact several potential alibi witnesses who lived out of state. Because no lawyer could have effectively represented Glover in the circumstances, I would affirm the district court’s award of the writ of habeas corpus. I therefore dissent, respectfully.
I.
Glover, who could not afford a lawyer, got trapped in the fallout after the public defender in Williamsburg County, South Carolina, resigned in 1991. Glover was arrested in Florida on January 24, 1991, pursuant to a South Carolina warrant for his arrest on kidnaping and armed robbery charges. He immediately waived extradition, and on February 3, 1991, he was transferred to the jail in Williamsburg County, South Carolina, to await further proceedings. It was not until three and one-half weeks later, at his preliminary hearing on March 1, 1991, that Glover met with the public defender, Gordon Jenkin-son, for the first and only time. Jenkinson spent a very short time talking to Glover about his case. Glover was able to convey to Jenkinson his claim of innocence that was based on an alibi defense: Glover said that he was in Florida on January 22,1991, when the crimes for which he was charged in South Carolina were committed. Glover told Jenkinson about one alibi witness in particular, Willie Palmer, his brother-in-law, who Glover says was with him in Florida during the hours of the South Carolina crimes. Glover, who remained in jail, wrote Jenkinson several letters listing other potential alibi witnesses for Jenkinson to interview. Jenkinson never responded to any of Glover’s letters, and he never contacted Glover after the preliminary hearing on March 1, 1991. Apart from showing up at Glover’s preliminary hearing, it appears that Jenkinson did not do any work on his case. In particular, Jen-kinson did nothing to investigate Glover’s alibi defense.
Although Glover was never given any notice of the event, Jenkinson resigned as public defender sometime between Glover’s hearing on March 1 and late May of 1991. Around the first of June all of the public defender’s cases, numbering about 120, were assigned to two Williamsburg County lawyers, Jerome Askins and William Pridgen. The case load was to be divided, with each lawyer taking fifty or sixty cases. Many of the cases would be called for trial during a two-week term of court set to begin on June 17, 1991. In the meantime, the public defender’s resignation had led to a huge backlog of preliminary hearings. As a result, Askins and Pridgen spent the first two weeks of June, from morning until evening each day, representing indigent defendants in preliminary hearings. Because the term of court began as soon as the preliminary hearings concluded, Askins and Pridgen had no time to investigate the cases of other defendants, such as Glover, who had their preliminary hearings earlier.
As the defender’s cases were being divided, Glover’s case was first assigned to Pridgen. Pridgen, however, discovered that he was already representing one of Glover’s co-defendants, so he had to decline the representation of Glover. It was not until Monday, June 17, 1991, the first day of the term, that Glover’s case was finally assigned to Askins. On that day Glover was brought to the Williamsburg County Courthouse, presumably to answer his indictment for kidnaping, armed robbery, and related charges. At that time Glover believed that Jenkinson, the public defender, was still his lawyer and that Jenkinson had subpoenaed the necessary witnesses. Glover was therefore puzzled when a man he had never seen before *282 (Askins) came into the holding room for prisoners, called his name, and told him that he would be representing him. Glover quickly realized that Askins, who had just received his file that day, knew nothing about his case. Yet Glover’s trial was to start in two days, on June 19, 1991.
At their meeting on June 17 Glover said to Askins, “I got witnesses that can prove I didn’t do this.” Glover identified ten persons in Florida who were potential witnesses, several of whom Glover said could provide an alibi. The first witness Glover identified was Willie Palmer, who Glover said was with him in Florida when the kidnaping and other crimes occurred in South Carolina.
Sometime on Monday, June 17, Askins began trying to contact the potential witnesses in Florida, but he was not able to reach anyone that day. Askins’s lack of success is understandable because he was operating under several impediments. First, because the term of court was under way and Askins was responsible for about sixty cases, he could not leave the courthouse. Askins had to remain at the courthouse because, for the most part, he did not “know from day to day or from hour to hour which case [would] be called or in what order.” Second, Askins did not have telephone numbers for most of the witnesses, which, as he acknowledged, impeded his efforts “to try to locate some of these people.” Third, there were no pay telephones or other convenient telephone facilities for lawyers in the Williamsburg County Courthouse. As a result, Askins had to borrow a telephone wherever he could find one, sometimes in the clerk’s office and sometimes in other offices. When a potential witness was not available to take his call, Askins was not able to provide a handy number where he could be reached for a callback. Fourth, Askins had no assistance in his efforts to contact witnesses or otherwise to investigate Glover’s case. In particular, Askins did not have access to an investigator or the funds to hire one.
On June 18, the day before trial, Askins was only able to contact two of the ten persons on the Florida list, Glover’s father and stepmother. They, however, were never identified as alibi witnesses. Finally, on the morning of trial Askins was able to talk to one of the potential alibi witnesses from Florida, Roy Brown, who could not provide any assistance. Thus, as trial began Askins had not contacted (indeed, he was never able to contact) seven of the Florida alibi witnesses. Most notably, he did not contact Willie Palmer, the main alibi witness identified by Glover.
Because of his inability in the time available to get in touch with potential alibi witnesses in Florida, Askins realized that Glover “would be at a terrible disadvantage” if the trial went forward as scheduled. Accordingly, Askins moved for a .continuance. He advised the court that he had not had the opportunity to talk with several Florida residents who, according to his client (Glover), could testify that Glover was in Florida and was “not in South Carolina during the times of these alleged offenses.” The court denied the motion, noting that it was “not going to continue the case based on Florida witnesses the court has no jurisdiction over.” Apparently, neither the court nor Askins was aware that a defendant in a criminal case in South Carolina could subpoena out-of-state witnesses under the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. See S.C.Code Ann. § 19-9-70; Fla. Stat. Ann. § 942.02.
Glover was forced to trial on June 19. The trial ended that same day, and Glover presented no defense. After the jury returned a guilty verdict at 6:36 p.m., the *283 judge proceeded directly to post-trial motions and sentencing. (All of these proceedings are reported in less than three pages of transcript.) Askins moved for a new trial on the ground that there had been insufficient time to contact witnesses in Florida. The motion was denied. The judge then announced that the matter was “ready for sentencing.” The judge asked Glover four or five perfunctory questions, heard very briefly from Askins, and then sentenced Glover to life in prison plus ten years. Glover was nineteen years old when he was sentenced. At that time neither the trial judge nor Askins knew that shortly before Glover’s trial the South Carolina kidnaping statute had been amended to change the penalty from a mandatory life sentence to a term not to exceed thirty years. Compare S.C.Code Ann. § 16-3-910 (Law.Co-op.1985) with § 16-3-910 (Law.Co-op.Supp.2000).
The South Carolina Supreme Court affirmed Glover’s conviction and sentence. Thereafter, Glover filed an application for post-conviction relief in state court. After an evidentiary hearing the state habeas court granted Glover a new trial, finding that he had “received ineffective assistance of counsel due to the shortness of time between counsel’s initial meeting with [Glover] and his trial only -two (2) days later.” The court also found that Glover “was not afforded sufficient time within which to contact potential witnesses.” A divided (3-2) South Carolina Supreme Court reversed on the ground that Glover “failed to show [that] counsel’s action or inaction resulted in [actual] prejudice.” Glover v. South Carolina, 318 S.C. 496, 458 S.E.2d 538, 540 (S.C.1995). Glover then filed a petition for a writ of habeas corpus in federal court in South Carolina. The district judge granted the writ after concluding that Glover “was both actually and constructively denied the assistance of counsel.” I would affirm the order granting the writ for the following reasons.
II.
The Sixth Amendment right to counsel “guarantees an accused ‘adequate legal assistance.’” United States v. Cronic, 466 U.S. 648, 655, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (quoting Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). “Unless the accused receives the effective assistance of counsel, ‘a serious risk of injustice infects the trial itself.’ ” Id. at 656, 104 S.Ct. 2039 (quoting Sullivan, 446 U.S. at 343, 100 S.Ct. 1708). To establish ineffective assistance of counsel, a defendant must show (1) objectively deficient performance and (2) prejudice. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The majority readily concludes, and the state concedes, that Glover meets the first element of the Strickland test because his lawyer’s “performance was not objectively reasonable.” Ante at 275. The question is whether Glover has established prejudice, and I am convinced that he has. Prejudice occurs when the lawyer’s substandard performance “deprive[s] the defendant of a fair trial, a trial whose result is reliable.” Strickland, 466 U.S. at 687, 104 S.Ct. 2052. As a general rule, a defendant must show actual prejudice, but there are at least three situations when prejudice is presumed. See Cronic, 466 U.S. at 658-660, 104 S.Ct. 2039. One situation is when “the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiring into the actual conduct of the trial.” Id. at 659-60, 104 S.Ct. 2039. A presumption of prejudice does not follow automatically from the “ ‘tardy appointment of counsel.’” Id. at 661, 104 S.Ct. 2039 (quoting Chambers v. Maroney, 399 U.S. 42, 54, 90 S.Ct. 1975, 26 L.Ed.2d 419 *284 (1970)). However, when circumstances “make it unreasonable to expect that counsel could adequately prepare for trial,” a presumption of prejudice is justified. Id. at 661-62, 104 S.Ct. 2039. Specifically, prejudice may be presumed when circumstances surrounding the short time available for investigation and preparation make witnesses inaccessible to the defense. See id. That is this case.
The majority rejects Glover’s claim by saying that he seeks “some broad-brush presumption of prejudice.” Ante at 279. The picture that Glover paints is not done with a broad brush. It portrays a set of circumstances that would render any lawyer — no matter how skilled — incapable of providing effective assistance. The right to the effective assistance of counsel includes the right to have one’s lawyer adequately investigate and prepare the case. See Powell v. Alabama, 287 U.S. 45, 57-58, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (noting that “consultation, thoroughgoing investigation and preparation [are] vitally important” in providing effective representation).
Due to a peculiar set of circumstances, Glover’s lawyer (Askins) was assigned a backbreaking load of work that had to be done under intolerable conditions in too little time. Sometime in the second quarter of 1991 the Williamsburg County, South Carolina, public defender resigned, leaving about 120 indigent defendants without counsel. As a two-week term of court was about to begin, during which many of these cases would be called, As-kins learned that he would be assigned one-half (50 to 60) of the public defender’s cases. Askins was not assigned Glover’s case until the first day of the term, Monday, June 17, which was just two days before trial. When Askins met with Glover that Monday, he learned that Glover wished to assert an alibi defense to the several charges, which included kidnaping. Glover gave Askins a list of ten witnesses (most of them in the alibi category) located in Florida. Glover was not able to provide telephone numbers.
To begin with, two days is not enough time to investigate and prepare an alibi defense based on witnesses who have never before been contacted and who are out of state, several hundred miles away. As-kins’s problems of lack of time and distant witnesses were aggravated by other conditions. The term of court was under way, and Askins could not leave the courthouse because he was responsible for many cases in addition to Glover’s. As Askins acknowledged, he did not know from hour to hour when some of his other cases might be called. Askins did not have the assistance of an investigator, so he had to try to contact the Florida witnesses by telephone from the court-house. Because there were no telephone facilities available for lawyers, Askins had to borrow a telephone in the clerk’s office or in other public offices as he attempted to locate the Florida witnesses. When witnesses were not available at the time Askins called, it was difficult for him to leave messages and request callbacks. It is little wonder that Askins was not able to contact any witnesses on Monday and only two on Tuesday (Glover’s parents, who were not alibi witnesses). It was not until Wednesday, the day of trial, that Askins finally got in touch with one of the potential alibi witnesses, Roy Brown, who could not help. The trial took place without Askins contacting the other alibi witnesses, including the main one, Willie Palmer, who Glover says was with him in Florida when the crimes in South Carolina occurred.
With respect to the issue of witness availability, the state habeas court determined that even if Askins had located the witnesses in Florida, they would not have *285 been available for trial. In the course of two short days Askins would have had to contact the witnesses in Florida, have subpoenas issued and served in Florida, arrange for the witnesses to travel to South Carolina, and ultimately prepare them to testify. The state habeas court therefore found — in a finding that was not disturbed by the South Carolina Supreme Court— that “even if [Askins] had contacted the witnesses who could have helped, they could not get here in time from Florida as the case was due to commence” immediately. Glover, therefore, was denied access to his witnesses.
Askins was not able to spend all of the two days between his appointment and trial on Glover’s case. Certain of his other fifty or sixty indigent cases demanded some of his time. As the district court observed, “[cjommon sense dictates ... that substantial portions of the brief time available to [Askins] during the two days ... was dedicated to the other cases which were assigned to him.” The workload and time pressures not only prevented Askins from conducting a thorough factual investigation, they also kept him from doing the most basic legal research. First, when Askins moved for a continuance, he was unable to respond when the judge denied the motion on the ground that the Florida witnesses were beyond the court’s subpoena power. If time and circumstances had allowed for thorough research, Askins would have known that the out-of-state witnesses were subject to subpoena under the uniform act adopted by South Carolina and Florida. Second, when the trial judge, within minutes of the guilty verdict, sentenced Glover to life in prison on the kid-naping count, Askins was unable to advise the judge that kidnaping no longer carried a mandatory life sentence. A review of the recent amendment to the kidnaping statute would have revealed that kidnaping carried a maximum term of thirty years. The sentencing error will be corrected, but Askins’s inability to research the penalty for kidnaping confirms that circumstances rendered him inherently incapable of providing effective assistance.
I respectfully disagree with the majority’s argument that the existing cases do not suggest that Glover is entitled to relief. Specifically, the majority contends (1) that Glover’s case is “nowhere close” to Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where the Supreme Court presumed ineffective assistance based on the circumstances and (2) that there are no “materially distinguishable factors” between Glover’s case and Griffin v. Aiken, 775 F.2d 1226 (4th Cir.1985), and Praylow v. Martin, 761 F.2d 179 (4th Cir.1985), two cases where we declined to presume prejudice. Glover’s case is not like Poivell v. Alabama to the extent that he was not seized by a sheriffs posse, placed under guard of the militia, or arraigned and tried “in an atmosphere of tense, hostile and excited public sentiment.” Powell, 287 U.S. at 51, 53 S.Ct. 55. Glover’s case is like Powell v. Alabama, however, on the fundamental point that he was “not accorded the right to counsel in any substantial sense” because his lawyer was unable to engage in “thoroughgoing investigation and preparation.” Id. at 57, 58, 53 S.Ct. 55.
Glover’s case is materially different from Griffin and Praylow. Neither case involved a situation where defense counsel was unable to contact potential witnesses or conduct a thorough investigation. In Griffin the defendant’s lawyer was carrying between 100 to 140 cases, but he had nearly two months, not two days, to prepare the case. During that time the lawyer was able to meet with the defendant several times, employ an investigator, review the prosecutor’s files, and interview several witnesses. This level of pretrial preparation, we held, did not “justify a presumption of ineffective counsel.” Grif *286 fin, 775 F.2d at 1280-81. In Praylow the defendant had two lawyers representing him, and he entered a guilty plea after talking with them several times. Although one of the lawyers was not appointed to represent the defendant until the day of his guilty plea, the other lawyer had been representing him on a related case for over seven months. The two lawyers worked together on the case and conducted an adequate investigation. In these circumstances, we declined to presume ineffectiveness. See Praylow, 761 F.2d at 183. In short, neither Griffin nor Praylow stands in the way of a writ in this case.
I am convinced that the South Carolina Supreme Court, in reversing the grant of the writ by the state habeas court, made “a decision that was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). The rule in Cronic is straightforward: circumstances giving rise to a Sixth Amendment violation are present “when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.” Cronic, 466 U.S. at 659-60, 104 S.Ct. 2039. The circumstances here prevented Askins from conducting a thorough investigation of Glover’s case, especially his alibi defense. The situation was so intolerable that no lawyer could have done the job. Askins’s performance was deficient through no fault of his own, and the circumstances impeding his ability to provide Glover effective representation trigger a presumption of prejudice. The state habeas court and the district court were therefore correct: the writ should be granted.