**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 13-4995**

───────────

UNITED STATES OF AMERICA,

     Plaintiff – Appellee,

  v.

DWIGHT GOODING, a/k/a D BLACK,

     Defendant - Appellant.

───────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:13-cr-00136-BO-1)

───────────

ARGUED: October 29, 2014    Decided: December 8, 2014

───────────

Before NIEMEYER, WYNN, and THACKER, Circuit Judges.

───────────

Affirmed by unpublished per curiam opinion.

───────────

**ARGUED:** Stephen C. Leckar, KALBIAN & HAGERTY, LLP, Washington, D.C., for Appellant. Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On December 19, 2013, Dwight Gooding ("Appellant") was sentenced to 84 months of imprisonment, plus ten years of supervised release, resulting from his guilty plea to a charge of conspiracy to distribute heroin. During the sentencing hearing, defense counsel did not say a single word on Appellant's behalf. Appellant now brings this direct appeal asking us to find that the record conclusively establishes a violation of his Sixth Amendment right to the effective assistance of counsel.

The Supreme Court has stated, "[I]n most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." Massaro v. United States, 538 U.S. 500, 504 (2003). The reasons behind this preference are clear. Above all else, collateral review provides an opportunity for a full airing of the ineffectiveness issue -- including any explanation the defense attorney might offer for his conduct. Here, looking only at the record on appeal, we are loath to accept Appellant's argument that nothing could justify defense counsel's decision to remain silent -- particularly where the prosecutor actually spoke in support of Appellant and recommended a below-guideline sentence, which Appellant in fact received.

2

Therefore, because the record before us does not conclusively establish a constructive denial of counsel under the standard set forth in United States v. Cronic, 466 U.S. 648 (1984), we decline to vacate Appellant's sentence.

## I.

The criminal case underlying this appeal was the product of a 2012 police investigation into gang-related drug trafficking in Appellant's home city of Henderson, North Carolina. Investigators with the Henderson Police Department determined that members of a gang known as the "Money Mob Gang" were selling large amounts of heroin, as well as marijuana soaked in formaldehyde. The investigators further concluded that armed gang members were committing robberies and assaults to facilitate these sales.

During this investigation, officers arranged for a confidential informant to purchase heroin from Appellant on two occasions. Police estimate the total amount of heroin involved in these transactions at 0.374 grams.[1] Separately, confidential informants bought a firearm from an unindicted person in October

---

[1] This is the estimated weight of heroin purchased in those two transactions. Police alleged, though, that Appellant was carrying an additional five or six bundles, or 0.725 grams, of heroin at the time of the second transaction.

2012. Police alleged that the firearm belonged to Appellant, and that the seller made the sale on Appellant's behalf.

Police also obtained statements from six people claiming to have knowledge about Appellant's participation in the illegal drug trade. One person alleged that Appellant received ten bricks of heroin from a supplier each week. Another person claimed to have observed Appellant sell heroin more than 100 times.

In May 2013, a grand jury indicted Appellant on three charges: one count of conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. § 846, plus two counts of knowing and intentional distribution of heroin in violation of § 841(a)(1). Appellant accepted a plea agreement in lieu of trial. Pursuant to the agreement, Appellant pled guilty to the conspiracy charge and promised to cooperate with the Government in its investigation. In exchange, the Government agreed to drop the two distribution charges.

The presentence investigation report ("PSR") calculated Appellant's offense level under the United States Sentencing Guidelines at 25. This calculation was based in part on the probation officer's determination that Appellant was accountable for 158.85 grams of heroin and that Appellant possessed firearms during his drug-trafficking activities.

4

Taking Appellant's criminal history into consideration,[2] the probation officer concluded that the Sentencing Guidelines imprisonment range was 110 months to 137 months.

Appellant objected to several contentions in the PSR, including the determination that he was accountable for 158.85 grams of heroin. Appellant initially asserted that he should have been accountable for only 40 to 60 grams. In addition, Appellant denied any involvement in the October 2012 firearm sale. Appellant abandoned all of these objections prior to sentencing.

The district court sentenced Appellant on December 19, 2013. The only words spoken by defense counsel during the sentencing hearing came at the very beginning of the proceeding, when counsel bid the judge good morning.

In his allocution, Appellant told the court that he is grateful to God for helping him recognize "the wrongdoing that

---

[2] Per the PSR, Appellant's criminal history includes ten convictions between 2006 and 2012. These include felony convictions in 2009 for common law robbery; possession with intent to manufacture, sell, or deliver marijuana; and possession of a stolen firearm. The PSR notes that defense counsel had objected to the inclusion of one conviction: a 2011 conviction for harassing phone call(s). Defense counsel claimed the case had been dismissed, but the probation officer stated in the PSR that he was able to confirm that this charge did result in a conviction. Appellant's brief asserts that defense counsel abandoned the objection.

[he] was doing in the streets." Supp. J.A. 4.[3] Appellant said he knows he has to accept responsibility for his actions. He proceeded to explain that he has cooperated with the government "to the fullest extent, tell them everything that I possibly could tell because I'm trying to get on a new path and new life because now I'm living for my son." Id.

The district court replied that Appellant has "a lot to be sorry for." Supp. J.A. 4. When Appellant told the court that he was not "raised to even be in this situation," id. at 5, the court noted that Appellant had "a whole page of priors, arrests anyway, right? . . . So they didn't just pick the wrong name and put a lot of heat on you, did they?" Id.

The prosecutor informed the court that Appellant was "one of the very few defendants who have cooperated" in the investigation of drug trafficking in Henderson. Supp. J.A. 6. Information provided by Appellant had already been used against three federal defendants, she said, and was likely to be used against others in the future. The prosecutor further told the court that in light of Appellant's "vast assistance," and the general "lack of cooperation on the parts of others," id. at 7,

---

[3] Citations to the "Supp. J.A." refer to the contents of the Supplemental Joint Appendix filed by the parties in this appeal.

the Government was recommending a sentence of 66 months -- well below the Sentencing Guidelines range.

The court then proceeded to direct a series of questions at a Henderson Police Department lieutenant. In the course of this inquiry, the court remarked that gun violence is a significant problem in Henderson and asked the lieutenant about the habits of Money Mob Gang members, including whether they operate crack houses and sleep in their cars. Upon concluding this line of questioning, the court turned to Appellant:

> THE COURT: What kind of gun do you usually shoot with? It's not a trick question. I mean, you carried a gun all your life, so what kind of gun do you use? Do you carry a great big .45 or carry a .32 or .22? Just tell me, I'm curious. You are a gun guy, right?
>
> APPELLANT: Not no more, sir. I wasn't since my first incarceration.
>
> THE COURT: Why is it so hard to get a question answered?
>
> APPELLANT: Before my incarceration I carried a .380.

Supp. J.A. 13-14. The court then sentenced Appellant to 84 months of imprisonment, plus ten years of supervised release.

## II.

Appellant argues on appeal that his lawyer's silence during the sentencing hearing presumptively prejudiced

7

Appellant. He asks us to vacate and remand for resentencing or, alternatively, for a hearing on the issue of ineffectiveness. Because the district court made no findings on this issue, our review must be de novo. See United States v. Smith, 640 F.3d 580, 596 (4th Cir. 2011).

## III.

### A.

Our rules of procedure endeavor to "'induce litigants to present their contentions to the right tribunal at the right time.'" Massaro v. United States, 538 U.S. 500, 504 (2003) (quoting Guinan v. United States, 6 F.3d 468, 474 (7th Cir. 1993) (Easterbrook, J., concurring)). For criminal defendants who wish to challenge their conviction or sentence on grounds of ineffective assistance of counsel, our rules present three options: (1) a motion for a new trial,[4] (2) a direct appeal, or (3) a collateral challenge pursuant to 28 U.S.C. § 2255. See United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998).

---

[4] Rule 33 of the Federal Rules of Criminal Procedure permits a district court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). We have stated that an ineffective assistance claim "may be brought as a motion for new trial based on 'other grounds,'" as provided in Rule 33(b)(2). United States v. Smith, 62 F.3d 641, 650 (4th Cir. 1995) (quoting Fed. R. Crim. P. 33). Such motions, however, "must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). No such motion was filed here.

Appellant has chosen the second option, despite this court's repeated warnings that we consider ineffective assistance claims on direct appeal only under limited circumstances. See, e.g., United States v. Smith, 62 F.3d 641, 651 (4th Cir. 1995); Sneed v. Smith, 670 F.2d 1348, 1354-55 (4th Cir. 1982) (per curiam); United States v. Mandello, 426 F.2d 1021, 1023 (4th Cir. 1970) (per curiam).

The Supreme Court has explained why it is generally preferable to bring an ineffective assistance claim via a § 2255 motion, rather than on direct appeal. In Massaro v. United States, the Court reasoned that a district court will ordinarily be "the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial." 538 U.S. at 505. A district court, it noted, may take testimony from witnesses -- including, perhaps, the attorney who allegedly rendered deficient performance. See id. This opportunity is unavailable on direct appeal. Rather, the appellate court must rely solely on trial records that are "not developed precisely for the object of litigating or preserving [an ineffective assistance] claim and thus [are] often incomplete or inadequate" for the purpose at hand. Id. at 504-05. The record may show what defense counsel did or did not say, but the reviewing court can only speculate as to why counsel did or did not say it.

For these reasons, we have consistently held that a defendant "may raise an ineffective assistance claim in the first instance on direct appeal only where the ineffectiveness conclusively appears from the record. Otherwise, ineffective assistance claims should be raised in the district court in a collateral proceeding under 28 U.S.C. § 2255." United States v. Russell, 221 F.3d 615, 619 n.5 (4th Cir. 2000) (citation omitted) (internal quotation marks omitted).

With this in mind, we proceed to consider Appellant's Sixth Amendment claim.

B.

Appellant argues that the trial record "confirms conclusively" that defense counsel's silence at the sentencing hearing "fell below the Sixth Amendment's threshold of performance." Appellant's Br. 6. In United States v. Brown, we indicated that an ineffectiveness claim is conclusively established when the trial record "compel[s] the conclusion that [counsel] was constitutionally ineffective." 757 F.3d 183, 191-93 (4th Cir. 2014). Our review of the record in this case compels no such conclusion.

The Sixth Amendment guarantees "[m]ore than a warm body" at the defense table.[5] United States v. Smith, 640 F.3d 580, 589 (4th Cir. 2011) (internal quotation marks omitted). Rather, a defendant is entitled to a "reasonably competent attorney," United States v. Cronic, 466 U.S. 648, 655 (1984) (internal quotation marks omitted), who "plays the role necessary to ensure that the trial is fair," Strickland v. Washington, 466 U.S. 668, 685 (1984). Thus, the Supreme Court has said, "[t]he right to the effective assistance of counsel is . . . the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." Cronic, 466 U.S. at 656.

Most of the time, a Sixth Amendment ineffectiveness claim will be analyzed under the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). See Harding v. Lewis, 834 F.2d 853, 859 (9th Cir. 1987). Under the Strickland test, a defendant must show, first, that counsel's performance was deficient, and, second, that the "deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. We have no occasion to apply the Strickland test here because Appellant

---

[5] The Sixth Amendment states in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

11

has made no showing of prejudice.  Indeed, Appellant conceded at oral argument that Strickland does not govern his appeal.

Rather, Appellant asserts that this is one of those rare cases in which we simply presume that counsel's performance prejudiced the defense.  See James v. Harrison, 389 F.3d 450, 455 (4th Cir. 2004) (explaining that a presumption of prejudice arises under "certain circumstances" in which "prejudice 'is so likely that case-by-case inquiry . . . is not worth the cost'" (alteration in original) (quoting Strickland, 466 U.S. at 692)); see also Hollenback v. United States, 987 F.2d 1272, 1275 (7th Cir. 1993) (outlining "an exception to the Strickland standard . . . for certain circumstances that are so egregiously prejudicial that ineffective assistance of counsel is presumed").  In Cronic, the Supreme Court identified three "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."  466 U.S. at 658.  Those circumstances are: (1) "when the defendant is completely denied counsel 'at a critical stage of his trial'"; (2) when "there has been a constructive denial of counsel"; and (3) "'when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the

12

trial.'" Glover v. Miro, 262 F.3d 268, 275 (4th Cir. 2001) (quoting Cronic, 466 U.S. at 659-60). "A finding of per-se prejudice under any of these three prongs is an extremely high showing for a criminal defendant to make." Id. (internal quotation marks omitted).

Appellant places this case in the second category, arguing that his lawyer's silence at the sentencing hearing amounted to a constructive denial of counsel. A constructive denial exists when "a lawyer 'entirely fails to subject the prosecution's case to meaningful adversarial testing,' thus making 'the adversary process itself presumptively unreliable.'" Glover, 262 F.3d at 275 (quoting Cronic, 466 U.S. at 659). It is not enough to allege that counsel was effective at some points of a sentencing proceeding but ineffective at others; rather, "the attorney's failure must be complete." Bell v. Cone, 535 U.S. 685, 696-97 (2002).

Appellant contends that, in this case, "there was no one speaking for the defendant at all" at the sentencing hearing. Reply Br. 9. Not so. Appellant himself, with counsel at his side, delivered a heartfelt allocutory statement expressing remorse for his criminal conduct and asserting a

desire to change his ways.[6]   More importantly, the prosecution commended Appellant for his "vast assistance" in ongoing criminal investigations and urged the court to issue a sentence well below the Sentencing Guidelines range.   The prosecution made these statements without presenting any evidence against Appellant at the sentencing hearing.   Under the circumstances, we cannot say a defense lawyer would be unwise to sit back and let the Government do the talking.   Cf. Warner v. Ford, 752 F.2d 622, 625 (11th Cir. 1985) (suggesting that, in an adversarial proceeding, "[s]ilence can constitute . . . strategy.").

The Government's posture at Appellant's sentencing hearing distinguishes this case from several of the cases Appellant cites in support of his position.   In those cases, the Government presented evidence that defense counsel neglected to

---

[6] To be sure, an allocutory statement does not absolve a defense attorney of his responsibility to effectively represent his client.   This case, however, does not require us to decide whether defense counsel fell short of his obligations under the Sixth Amendment, and we do not so do.   The question before us is simply whether the record on direct appeal conclusively establishes a constructive denial of counsel under Cronic.   In this context, we find Appellant's allocutory statement worthy of note.   Without a fully developed record, there is no way to know whether it was a strategic decision for Appellant to speak in lieu of counsel, nor whether defense counsel played some role in helping Appellant craft his statement.

14

challenge.[7] See Miller v. Martin, 481 F.3d 468, 473 (7th Cir. 2007) (per curiam) (finding a constructive denial of counsel at a sentencing hearing in which the defense lawyer, by his own admission, "did not offer a shred of mitigating evidence," object to errors in the PSR, or "even lobby for a sentence lower than the one urged by the State"); Patrasso v. Nelson, 121 F.3d 297, 303-05 (7th Cir. 1997) (holding that defense counsel was constitutionally ineffective for failing to rebut adverse evidence at the sentencing hearing); Harding v. Davis, 878 F.2d 1341, 1343 (11th Cir. 1989) (presuming prejudice under Cronic where defense counsel was silent throughout client's criminal trial). In Patrasso v. Nelson, the Seventh Circuit condemned as "especially grievous" defense counsel's failure to even attempt to contradict the prosecution's case at sentencing, given that "the facts and circumstances presented [by the prosecution] at trial and relied upon heavily at sentencing were one-sided and very possibly inaccurate." 121 F.3d at 304-05. Here, by contrast, there was no case for the defense to contest.

Instead, Appellant's gripe with defense counsel, it would seem, is not that he failed to challenge the prosecutor, but rather that he failed to challenge the court. See

[7] We note as well that the Sixth Amendment ineffectiveness claims in these cases were presented in habeas petitions, rather than on direct appeal.

15

Appellant's Br. 13 (asserting that "the district judge's attitude towards the defendant was troubling," and that the judge's "brusqueness should have set off an amber light to defense counsel that intercession was necessary"). This is a very different sort of complaint, as it raises potentially complex questions about the interchange between counsel and the bench. No doubt, there will be times when the tenor of a court's colloquy might well persuade counsel that silence is his best option.[8]

This is not an instance of a lawyer sleeping through trial. See, e.g., Burdine v. Johnson, 262 F.3d 336, 341 (5th Cir. 2001) (en banc) (holding that "a defendant's Sixth Amendment right to counsel is violated when that defendant's counsel is repeatedly unconscious through not insubstantial portions of the defendant's capital murder trial"); Tippins v.

---

[8] Appellant identifies four matters that, in his view, defense counsel should have brought to the court's attention -- specifically, Appellant's "poly-substance abuse," his parents' gainful employment, his "stable relationship with his infant son and the baby's mother," and his efforts at rehabilitation. Appellant's Reply Br. 13 (internal quotation marks omitted). Counsel might also have noted that Appellant was making voluntary child support payments at the time of his arrest. In fact, though, Appellant's allocutory statement referred to both his love for his son and his efforts to turn his life around. Interrupting the court's colloquy to raise these points again would have been redundant and quite possibly unwise. Moreover, each of these points was addressed in the PSR, and it is not at all clear what the defense stood to gain from mentioning them again.

*Walker*, 77 F.3d 682, 687 (2d Cir. 1996) (concluding that a criminal defendant "suffered prejudice, by presumption or otherwise, if his counsel was repeatedly unconscious at trial for periods of time in which defendant's interests were at stake"); *Javor v. United States*, 724 F.2d 831, 833 (9th Cir. 1984) ("[W]hen an attorney for a criminal defendant sleeps through a substantial portion of the trial, such conduct is inherently prejudicial and thus no separate showing of prejudice is necessary."). Nor, for that matter, does this case resemble other out-of-circuit cases that Appellant commends to our attention. In one of those cases, *Martin v. Rose*, an attorney who mistakenly believed that mounting a defense at his client's sex offense trial would waive his pretrial motions declared in open court that he would not participate in the trial. *See* 744 F.2d 1245, 1247-48 (6th Cir. 1984). Such "total lack of participation," the Sixth Circuit held, was "constitutional error even without any showing of prejudice." *Id.* at 1250-51.

A similarly ill-conceived approach was at work in *Miller v. Martin*. There, a defense attorney instructed his client to keep silent throughout the sentencing hearing, apparently because he expected the appellate court would agree to order a new trial. 481 F.3d at 470. The lawyer decided that he, too, would remain mute, except to inform the sentencing court that his client did not recognize the court's authority.

17

_Id._  The Seventh Circuit held that counsel's "advocacy at sentencing was so non-existent as to fall within even [_Cronic's_] very narrow exception."  _Id._ at 473.

The case before us is different.  Counsel in this case neither disclaimed his responsibilities nor declared his resistance to the court's jurisdiction.  He simply kept mum, permitting the prosecution to advocate for a below-guideline sentence.  Based solely on our review of the record before us, we cannot say that this decision was so indicative of prejudice that a case-specific inquiry would not be worthwhile.

IV.

As Appellant concedes, it is well settled in this circuit that "a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court."  _United States v. King_, 119 F.3d 290, 295 (4th Cir. 1997) (internal quotation marks omitted).  Nevertheless, Appellant argues that, at the very least, we ought to remand his case to the district court with instructions to conduct a full hearing on his ineffective assistance claim.  Appellant has not persuaded us that remand would be proper in this case.

There is widespread agreement among our sister circuits that post-conviction proceedings are generally the proper avenue for ineffective assistance claims.  _See, e.g._, _United States v. Ferguson_, 669 F.3d 756, 762 (6th Cir. 2012);

18

United States v. Patterson, 595 F.3d 1324, 1328 (11th Cir. 2010); United States v. Yauri, 559 F.3d 130, 133 (2d Cir. 2009); United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006); United States v. Medina, 427 F.3d 88, 91 (1st Cir. 2005); United States v. Gordon, 346 F.3d 135, 136 (5th Cir. 2003) (per curiam); United States v. Givan, 320 F.3d 452, 464 (3d Cir. 2003); cf. United States v. Flores, 739 F.3d 337, 341-42 (7th Cir. 2014) (advising criminal defendants that § 2255 "affords the only realistic chance of success" on a claim of ineffective assistance). But see United States v. Todd, 287 F.3d 1160, 1164 (D.C. Cir. 2002) (providing that "where, as here, an ineffective assistance claim cannot be resolved on the current record, this circuit remands"). Two of those circuits, the Second and Third, have found reason to remand for proceedings in the district court, but in limited circumstances. While the Second Circuit has indicated that it ordinarily would not remand an ineffective assistance claim, it made an exception in a case where the Government consented to a remand on a separate ineffectiveness claim. See Yauri, 559 F.3d at 133. Similarly, in Government of the Virgin Islands v. Vanterpool, the Third Circuit reaffirmed its general practice of eschewing ineffective assistance claims on direct appeal but remanded because the appellant would have been ineligible for collateral relief. See 767 F.3d 157, 163-64 (3d Cir. 2014).

19

Neither of these circumstances is presented here. Instead, Appellant argues that remand is appropriate because his claim of ineffectiveness is strong, and because relegation to a § 2255 proceeding "would be inefficient in the extreme." Appellant's Br. 19. Our court, however, is not in the habit of deciding which claims, if any, are so strong that the efficiency of remand would be preferable to collateral review. Rather, we have clearly and consistently stated that a § 2255 motion is the "proper avenue" for claims ill suited for review on direct appeal. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010). Appellant has given us no reason to deviate from this practice. Appellant may pursue his ineffective assistance claim by filing a timely motion for habeas relief under § 2255, if he so desires.

V.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.