**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 06-4631**

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARUTHI MANNEY,

Defendant - Appellant.

———————————

**No. 06-4632**

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LAKSHMI MANNEY,

Defendant - Appellant.

———————————

Appeals from the United States District Court for the District of
Maryland, at Greenbelt.   Deborah K. Chasanow, District Judge.
(8:04-cr-00560-DKC-1; 8:04-cr-00560-DKC-2)

———————————

Submitted:  August 27, 2007        Decided:  September 5, 2007

———————————

Before WILKINSON, TRAXLER, and DUNCAN, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

---

William C. Brennan, Jr., BRENNAN, SULLIVAN & MCKENNA, LLP, Greenbelt, Maryland; Robert C. Bonsib, MARCUS & BONSIB, Greenbelt, Maryland, for Appellants. Rod J. Rosenstein, United States Attorney, Bryan E. Foreman, Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Dr. Maruthi Manney was convicted by a jury of wire fraud in violation of 18 U.S.C.A. § 1343 (West 2000 & Supp. 2007)(Count One) and of eight counts of mail fraud in violation of 18 U.S.C.A. § 1341 (West 2000 & Supp. 2007) (Counts Two through Nine). His wife, Lakshmi Manney, was convicted on Counts Two through Nine and acquitted on Count One. The district court sentenced Maruthi Manney to thirty-six months' imprisonment and Lakshmi Manney to twenty-one months' imprisonment. It imposed three-year terms of supervised release for both the Manneys and ordered both to pay $605,932.71 in restitution. In these consolidated appeals, the Manneys challenge (I) the district court's denial of their motion for continuance of the trial date, and (II) the district court's denial of their motion for a new trial.

The charges arose from the Manneys' ownership and fraudulent operation of SAI Plus, a health care benefits administration company located in Rockville, Maryland. With respect to Count One, the Government's evidence demonstrated that Maruthi Manney used a wire communication in furtherance of a scheme to defraud First Odyssey Resource Management ("Odyssey"), a professional employer organization. Maruthi Manney represented that SAI Plus would provide a fully-insured employee group health plan that would pay routine claims to health care providers within four weeks of receipt. Odyssey paid SAI Plus premiums for the

months of August, September and October 1999, until employees began to recognize that certain health claims were not being paid. In fact, SAI Plus was never a licensed insurance company and failed to provide Odyssey with a fully-insured health plan.

With respect to Counts Two through Nine, the Government's evidence demonstrated that Maruthi and Lakshmi Manney used the mail in furtherance of a scheme to defraud Troup Independent School District, Sundown Ranch, Dusty Rhodes Ford, All Seasons Sash and Door, Brock Independent School District, Pine Tree Independent School District, Waskom Independent School District, and Gulf Coast Transport, Inc. Maruthi Manney represented that SAI Plus would act as Third Party Administrator ("TPA") for these entities, providing a variety of services including payment of routine claims to health care providers within four weeks of receipt, and maintenance of stop-loss insurance on behalf of each individual/entity. Based on these representations, each of the entities enrolled and paid premiums to SAI Plus.

In fact, SAI Plus was never licensed as a TPA in Texas. By November 1999, the groups began to notice that certain claims were not being paid. SAI Plus employees testified that, at the instruction of the Manneys, claims were continually processed but an increasing volume of checks were printed and placed in a file cabinet rather than mailed to the payee. At times, after a particular employer group or its broker complained repeatedly, the

- 4 -

unmailed checks for that group would be sent.  In November 2000, Federal agents executed a search warrant on the SAI Plus office, and seized 4902 printed but unmailed health insurance claim checks.[1]

The Government's evidence also demonstrated that for each of the entities named in Counts Two through Nine, stop-loss insurance coverage was not in place on the effective date of their health plan.  Each of the stop-loss policies became effective between three and eight months late.  In addition, stop-loss coverage for several of the entities lapsed for three to five months during the pendency of the health plan because SAI Plus failed to pay the premium to the stop-loss insurance carrier.[2]  The Government's evidence also indicated a mismanagement of funds.

I.

We review a district court's denial of a motion for a continuance for an abuse of discretion.  United States v. Williams, 445 F.3d 724, 738 (4th Cir.), cert. denied, 127 S. Ct. 314 (2006). An abuse of discretion in this context is "'an unreasoning and

---

[1]The 4902 unmailed checks related to other employer groups, and were not limited to the eight entities named in the indictment.

[2]The uncontested evidence at trial demonstrated that no stop-loss claims were presented to SAI Plus during the periods when there was no coverage, therefore, these lapses did not result in actual loss to any of the employer groups.

arbitrary insistence upon expeditiousness in the face of a justifiable request for delay'" and violates a defendant's Sixth Amendment right to counsel.  Id. at 739 (quoting Morris v. Slappy, 461 U.S. 1, 11-12 (1983)).  In order to prove an infringement of the right to effective assistance of counsel, however, "the defendant must show that the error specifically prejudiced [his] case in order to prevail."  Id. (internal quotation marks and citation omitted).

A party's substantial delay is also relevant to our review of the denial of a motion for continuance.  See United States v. Badwan, 624 F.2d 1228, 1231 (4th Cir. 1980).  "The later that a motion for a continuance is made, the more likely it is made for dilatory tactics; hence, it is less likely that the district court arbitrarily denied the continuance."  United States v. LaRouche, 896 F.2d 815, 824 (4th Cir. 1990).

The Manneys' trial lawyers were both appointed in June 2005.  Discovery in this case included over 200 boxes of documents seized from SAI Plus.  Despite having filed multiple pre-trial motions, counsel did not even mention a continuance until the pre-trial motions hearing just eleven days before trial.  A review of the transcript reveals that the Manneys' attorneys were actually seeking to discover what evidence (witnesses and exhibits) the Government intended to introduce at trial.  Only when it appeared they may not prevail did counsel begin to argue for a continuance.

In view of the timing of this oral motion, the district court may have concluded that it was merely a dilatory tactic. See LaRouche, 896 F.2d at 823 ("the district court alone has the opportunity to assess the candidness of the movant's request").

In addition, as the hearing progressed, counsel received concessions from the Government that ultimately mitigated their stated need for a continuance of the trial date.[3]  At the district court's urging, the Government disclosed the categories of documents it intended to introduce as trial exhibits, and that its witnesses and exhibits would be confined to the nine entities named in the indictment as well as a few others.  The Government also gave defense counsel its demonstrative exhibit summarizing the evidence to be introduced regarding the Manneys' various bank accounts, as well as an index describing the contents of each of the 204 boxes of SAI Plus documents.  After considering the nature of the documents produced, and in light of the Government's narrowing of the issues, the district court determined that a continuance was not necessary and denied the motion.

---

[3]Appellants contend that trial counsel did not fully appreciate how much time they would need to access and review the electronic records that the Government had produced to them.  This undermines the Manneys' argument because the test for abuse of discretion in denying a continuance "depends mainly on the reasons presented to the district judge at the time the request is denied." LaRouche, 896 F.2d at 823.  The district court cannot be accountable for information that the parties did not present to it.

We find that this was not an abuse of discretion. <u>See</u> <u>United States v. Stewart</u>, 256 F.3d 231, 244-46 (4th Cir. 2001). In <u>LaRouche</u>, the district court denied a continuance despite the fact that counsel had only thirty-four days to review "voluminous documents" and to prepare for a four-week trial on a thirteen-count mail fraud indictment. <u>LaRouche</u>, 896 F.2d at 822. We affirmed the denial, in part, based on counsel's eighteen-day delay in requesting a continuance, and because defense counsels' pre-trial submissions demonstrated familiarity with the case. <u>Id.</u> at 824. Similarly, the Manneys' numerous pretrial filings and significant delay in requesting a continuance, in conjunction with the narrowing of issues more than a week before trial, indicate that the denial of a continuance was not an abuse of discretion.

Moreover, even if the district court did abuse its discretion in denying the motion for continuance, the Manneys have not demonstrated that the denial "specifically prejudiced" their case. <u>LaRouche</u>, 896 F.2d at 823. Rather than articulating specific errors of counsel resulting in actual prejudice, Appellants contend that under the circumstances faced by trial counsel, "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." Appellants' Brief at 14 (citing

United States v. Cronic, 466 U.S. 648, 659 (1984); Glover v. Miro, 262 F.3d 268, 275 (4th Cir. 2001)).

In Cronic, the Supreme Court held that while it is normally inappropriate to presume ineffective assistance of counsel without an inquiry into whether a defendant was actually prejudiced by counsel's performance at trial, circumstances may sometimes be so egregious as to warrant a presumption of prejudice. Cronic, 466 U.S. at 659-60. The Court noted, however, that the presumption of prejudice does not arise in every case in which counsel belatedly begins representation of a defendant. See Morris v. Slappy, 461 U.S. 1 (1983); Avery v. Alabama, 308 U.S. 444 (1940).

In fact, the Court refused to adopt the presumption in the case before it, even though Cronic's counsel had been appointed just twenty-five days before the trial and was a young real estate lawyer with no criminal law experience who had never previously tried a case before a jury. Cronic, 466 U.S. at 663-66. The Court rejected the argument that a presumption of prejudice followed from the fact that the Government had years to review the relevant documents while defense counsel had only twenty-five days. Id. at 664-65. There, as in this case, "the time devoted by the Government to the assembly, organization, and summarization of thousands of written records . . . unquestionably simplified the work of defense counsel in identifying and understanding the basic character of defendants' scheme." Id. The Court also recognized

- 9 -

that, like here, where the underlying facts are not in dispute, the time was more than sufficient to consider "whether those facts justify an inference of criminal intent." Id. at 664-65.

We find that the circumstances of this case do not warrant a presumption of prejudice. The Manneys' trial counsel accepted their appointments with full knowledge of the trial date, and with ten and twelve weeks respectively, to prepare. There is no suggestion that the attorneys were inexperienced or otherwise ill-suited to defend these criminal charges. While the case involved a significant volume of documents, the Government described its evidence in advance of trial, simplifying the work of defense counsel. We have declined to presume prejudice under circumstances more trying than these. See Stewart, 256 F.3d at 246; Griffin v. Aiken, 775 F.2d 1226, 1229-30 (4th Cir. 1985); see also United States v. Gaither, 527 F.2d 456, 457-58 (4th Cir. 1975).

II.

Federal Rule of Criminal Procedure 33(a) permits the trial court to grant a motion for a new trial "if the interest of justice so requires." A district court "'should exercise its discretion to grant a new trial sparingly,' and . . . should do so 'only when the evidence weighs heavily against the verdict.'" United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003) (quoting

United States v. Wilson, 118 F.3d 228, 237 (4th Cir. 1997) (internal quotation marks omitted)).  We review the denial of a Rule 33 motion for abuse of discretion.  United States v. Adam, 70 F.3d 776, 779 (4th Cir. 1995).  Under this standard, we "'may not substitute [our] judgment for that of the district court; rather, we must determine whether the court's exercise of discretion, considering the law and the facts, was arbitrary or capricious.'"  United States v. Fulcher, 250 F.3d 244, 249 (4th Cir. 2001) (quoting United States v. Mason, 52 F.3d 1286, 1289 (4th Cir. 1995)).

In order to warrant a new trial based on newly discovered evidence, a defendant must show that:  (1) the evidence is newly discovered; (2) the defendant used due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence would probably result in an acquittal at a new trial.  United States v. Lofton, 233 F.3d 313 (4th Cir. 2000).  Unless the defendant demonstrates all five of these factors, the motion should be denied.  United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989).

The district court found that the proffered testimony of Kola and Kumar failed to satisfy at least four of the five factors of this test.  These findings are entitled to great weight on appeal.  See United States v. Johnson, 487 F.2d 1278, 1279 (4th Cir. 1973) (district court's findings "properly drew upon the

- 11 -

knowledge and observations gained by having presided at the original trial").

Kola's and Kumar's testimony that the Manneys infused personal funds into SAI Plus when necessary is merely cumulative of what the jury heard from Maruthi Manney. Their testimony that a substantial number of medical claims were actually paid is both immaterial and cumulative; the Government did not advance a theory that no claims were paid, and numerous Government witnesses testified about claims that were, in fact, paid. Kola's testimony about the effect of the search warrant on the continued viability of SAI Plus is also cumulative and not material to the charges in the indictment. Kumar's testimony that he was "unaware of any regular or ongoing problem with the payment of medical claims" is immaterial and contradicts the testimony of Maruthi Manney.

The only material, non-cumulative testimony comes from Kola, relating his familiarity with the day-to-day accounting at SAI Plus. He states that he "could have contradicted the government's allegations which suggested that large amounts of money were not handled properly and were not used to pay claims for medical services." In light of the Government's evidence at trial, we find that the district court did not abuse its discretion in concluding that this testimony would not likely result in an

acquittal.[4]  Even if a jury could find Kola's testimony more credible than that of the FBI's financial analyst, such testimony would not diminish the impact of the Government's undisputed evidence regarding drawers full of unmailed checks as well as stop-loss insurance failures.  The accounting was only a small part of the picture created by the Government's evidence.

In support of their demand for a new trial, Appellants' remaining grounds, in essence, amount to an argument that the Manneys' trial attorneys were ineffective.  Appellants bemoan the lack of a defense expert in forensic accounting and insurance, but the record indicates that trial counsel did not seek leave to hire any experts.  Appellants purport to demonstrate the false testimony of a Government witness regarding the signatures on the Dallas General insurance policy, but do so based on documents that were in possession of trial counsel.  They also rely on allegedly misleading testimony regarding payment of Odyssey claims at a time when Odyssey had ceased to pay premiums, as well as alleged errors by the FBI financial analyst, but such testimony was subject to cross-examination at trial.

"Although generally not raised in the district court nor preserved for review on appeal, ineffective assistance claims

---

[4]Notably, Kola's affidavit, signed in New Zealand, does not indicate why he failed to testify on behalf of the Manneys during their first trial, nor does it include any statement that Kola is willing to return to the United States to testify in the event of a new trial.

asserted in motions under Rule 33 — and ruled on by the district court — may be considered on direct appeal." <u>United States v. Russell</u>, 221 F.3d 615, 619 (4th Cir. 2000). Here, the district court correctly declined to rule on whether trial counsel was actually ineffective because the Manneys failed to offer any statement or testimony from those attorneys. Without hearing from trial counsel about the tactical decisions confronted, a court cannot make a reasoned judgment as to whether or not representation was ineffectual. <u>See</u> <u>United States v. DeFusco</u>, 949 F.2d 114, 120-21 (4th Cir. 1991). Moreover, the district court was "not persuaded that any competent attorney would have done more than they did." For the reasons already discussed, we find that this was not an abuse of discretion.

We therefore affirm the Manneys' convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>